[Cite as *In re A.R.-C.*, 2026-Ohio-2833.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.R.-C.                               :

                                        No. 116338

A Minor Child                              :

[Appeal by G.R.-C., Mother]                :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD24910645

---

### *Appearances:*

Dawn Snyder Law, LLC and Dawn Synder, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

DEENA R. CALABRESE, J.:

{¶ 1} Appellant G.R.-C. ("mother") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), entered March 12, 2026. The juvenile court's judgment granted permanent custody of one of mother's children, A.R.-C., to appellee Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") pursuant to R.C. 2151.353(A)(4),

thereby terminating mother's parental rights.[1]  After reviewing the facts of the case and pertinent law, we affirm the juvenile court's judgment.

## I.    Facts and Procedural History

{¶ 2} On October 7, 2024, six-year-old A.R.-C. was removed from mother's care and placed in CCDCFS custody by ex parte telephonic order after it was discovered that she was suffering from a fractured femur and several other injuries, including bruising and marks on her back, neck, and face.[2]  Her injuries were serious enough that she was hospitalized at the time of removal.  On October 8, 2024, CCDCFS filed a complaint alleging that A.R.-C. was abused and requesting a dispositional order of temporary custody to the agency.  That same day, A.R.-C. was committed to emergency custody of CCDCFS.

{¶ 3} Mother subsequently appeared in juvenile court with counsel and stipulated to the allegations of the complaint as amended.  The amended complaint included not only references to A.R.-C.'s injuries but also alleged that mother was currently incarcerated and had been charged with endangering children, strangulation, and domestic violence in a case pending before the Cuyahoga County Court of Common Pleas, General Division ("general division").  A.R.-C. was adjudicated to be abused and was ordered placed in CCDCFS temporary custody.

---

[1] The juvenile court's judgment likewise terminated the alleged father's parental rights.  A.R.-C.'s alleged father has not appealed.

[2] As noted above, the alleged father, who has never made himself available to CCDCFS, has not appealed the juvenile court's order terminating parental rights.  Accordingly, our discussion of pertinent facts focuses principally on mother.

**{¶ 4}** In February 2025, mother pled guilty to and was convicted of attempted endangering children, a felony of the fourth degree in violation of R.C. 2923.02/R.C. 2919.22; strangulation, a felony of the fifth degree in violation of R.C. 2903.18(B)(3); and domestic violence, a felony of the fourth degree in violation of R.C. 2919.25. No sentencing entry was offered as an exhibit at the juvenile court's dispositional trial, but it was undisputed that mother was incarcerated after her conviction and had only recently been released.

**{¶ 5}** On May 6, 2025, CCDCFS filed a motion to modify temporary custody to permanent custody. Mother subsequently filed two motions, one on November 24, 2025, and the second on February 26, 2026, requesting that A.R.-C. be placed in the legal custody of two different individuals.

**{¶ 6}** On March 5, 2026, the juvenile court conducted the dispositional trial on the parties' motions. Mother had been released on March 1, 2026, four days prior to trial, but did not appear despite receiving notice. She was represented at trial by counsel, who indicated that she had spoken with mother two days before her release. (Tr. 5.) Mother's counsel requested a continuance, which the juvenile court denied. The juvenile court noted that the case had previously been continued. It added that if mother "were here, the decision may be different, or if she communicated with someone, then [the juvenile court] would maybe have a different position." (Mar. 5, 2026 tr. 8.)[3] The alleged father did not appear.

---

[3] Mother has not assigned error as to the sufficiency of notice or the trial court's denial of a continuance.

**{¶ 7}** The juvenile court heard testimony from the agency's sole witness, CCDCFS caseworker Tommie Perry. Perry testified that following A.R.-C.'s removal from mother's custody, CCDCFS developed a case plan to promote the permanency plan of reunification. The case plan included services to address mother's mental health, domestic violence, and parenting issues. Perry testified that he had sent mother the case plan during her incarceration and had been able to maintain contact with her, but that her incarceration limited the agency's access to her and her access to agency-referred services. Furthermore, mother had not had any visitation with A.R.-C. because of a no-contact order.

**{¶ 8}** Perry testified that since December 2024, A.R.-C. had been placed with her godparents, who are the grandparents of her half-brother and with whom she had a relationship prior to the removal from mother's care. CCDCFS exhibit No. 2 was a certified copy of a final order of the Guernsey County Court of Common Pleas, Juvenile Division, finding that mother had abandoned A.R.-C.'s half-brother and committing him to his father's custody.

**{¶ 9}** Perry testified that he had been able to see the godparents' home, that he found it appropriate, and that A.R.-C. appeared to be closely bonded with her half-brother. Moreover, Perry testified that A.R.-C. appeared to be happy there:

> She's doing good in the home. She's real comfortable with them. She's really — she (inaudible) happy to have her in their home. All is well. Yeah, I think she's really happy with them.

(Mar. 5, 2026 tr. 29.)

{¶ 10} Perry further testified that while mother had identified two individuals as potential custodians for A.R.-C., he had been unable to make contact with either of them. In addition, neither individual appeared for trial despite the fact that arrangements had been made for them to appear virtually and to have an interpreter present to provide any required assistance.

{¶ 11} Several additional exhibits were admitted into evidence without objection. These included a certified copy of the indictment charging mother with endangering children, strangulation, and domestic violence. The certified copy (CCDCFS exhibit No. 5) had the victim's name redacted. Perry identified CCDCFS exhibit No. 7 as an unredacted copy of the indictment specifying A.R.-C. as the victim. He also identified a certified copy of the general division's journal entry reflecting the fact of mother's guilty plea and conviction. (CCDCFS exhibit No. 6.)

{¶ 12} At the close of the agency's case-in-chief, the juvenile court offered to take a recess to allow mother's counsel to try to contact the witnesses who had been subpoenaed and slated to appear virtually and for whom an interpreter had been secured. Those efforts were unsuccessful. The juvenile court denied mother's renewed request for a continuance, and mother called no witnesses.

{¶ 13} Consistent with her report, the guardian ad litem ("GAL") recommended that A.R.-C. be placed in the permanent custody of the agency. She noted that A.R.-C. had no contact with mother or the alleged father and that mother had not appeared for trial. In her written report, the GAL noted mother's conviction and that A.R.-C. was the victim. The GAL further wrote that A.R.-C. "thoroughly

enjoys" living with her godparents, that her half-brother and his father lived nearby, and that she had "always viewed [her godparents] as her family and they are thrilled to include her in theirs." The GAL stated in her report that A.R.-C. referred to the godparents as "Grandma & Grandpa[,]" and that she referred to her half-brother's father as her father. According to the report, A.R.-C.'s godfather "report[ed] that [A.R.-C.] [had] made the transition into their home seamlessly." The GAL expressed the opinion in her report that A.R.-C. and her godparents were "extremely happy and content in their current living arrangement." The GAL recommended permanent custody of A.R.-C. to CCDCFS.

{¶ 14} At the conclusion of trial, the juvenile court stated that while it would issue a journal entry with specific findings, it found "that an order of permanent custody at this time for [A.R.-C.] is in her best interest" and that termination of parental rights was the appropriate disposition. The juvenile court journalized a detailed entry on March 12, 2026, making numerous statutory findings in support of its conclusion that A.R.-C. cannot or should not be placed with either parent and ordering A.R.-C. committed to the permanent custody of CCDCFS.

## II. Assignment of Error

{¶ 15} Mother presents a single assignment of error for our review:

> The trial court erred and abused its discretion in finding because awarding permanent custody to the agency was against the manifest weight of the evidence.

{¶ 16} Finding no merit to the assignment of error, we affirm the juvenile court's judgment.

## III. Analysis

{¶ 17} This court has acknowledged that while the right to raise one's own children is an essential, basic civil right, that right is not absolute, but is instead subordinate to the welfare of the children:

> [T]he right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re B.B.C.*, 2024-Ohio-588, ¶ 14, 236 N.E.3d 417 (8th Dist.). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This right, however, is not absolute. "'The natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974).

*In re Z.H.*, 2025-Ohio-2596, ¶ 12 (8th Dist.).

{¶ 18} With respect to the standard of review for permanent-custody decisions, the Ohio Supreme Court has stated:

> [T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 19} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been

established." *In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), citing *In re B.M.*, 2020-Ohio-4756, ¶ 11 (8th Dist.). When reviewing a manifest-weight challenge, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20; *see also In re J.F.*, 2024-Ohio-3311, ¶ 14 (8th Dist.). "We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence." *In re S.H.*, 2019-Ohio-3575, ¶ 25 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, ¶ 48 (8th Dist.); *see also In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

{¶ 20} In a case centered on child custody, the Ohio Supreme Court has emphasized the importance of affording appropriate deference to the finder of fact:

> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

{¶ 21} Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. *In re Z.C.*, 2023-Ohio-4703, at ¶ 7. The Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See also In re A.M.*, 2025-Ohio-752, ¶ 14 (8th Dist.).

{¶ 22} Under this statutory framework, the juvenile court's analysis on a motion for permanent custody consists of two steps. The juvenile court must first find the existence of one of the five conditions specified in R.C. 2151.414(B)(1):

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 23} Once the juvenile court has determined that any one of the specified conditions exists, it then must determine whether permanent custody is in the best interest of the child in light of the factors specified in R.C. 2151.414(D):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).[4]

{¶ 24} In satisfaction of R.C. 2151.414(B)(1)(a), the juvenile court found that the child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" based on findings pursuant to R.C. 2151.414(E). "A juvenile court is only required to find that *one* of [the R.C. 2151.414(E)] factors is met in order to properly find that a child cannot or should not be placed with a parent." (Emphasis added.) *In re Y.F.*, 2024-Ohio-5605, ¶ 43 (8th Dist.), citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.).

{¶ 25} The juvenile court found the existence of statutory factors R.C. 2151.414(E)(6), (15), and (16) with respect to mother. In our review, "[w]e need not address each factor" where, at a minimum, at least one R.C. 2151.414(E) factor was satisfied. *In re A.E.*, 2025-Ohio-1466, ¶ 14 (8th Dist.). Here, the exhibits offered by CCDCFS unquestionably demonstrate that mother pled guilty to and was convicted of domestic violence in violation of R.C. 2919.25(A), with A.R.-C. specified as the victim. (CCDCFS exhibit Nos. 5-7.) This evidence conclusively established facts satisfying R.C. 2151.414(E)(6).

{¶ 26} Because the juvenile court found that at least one R.C. 2151.414(E) factor applied, it was required to enter a finding that A.R.-C. could not or should not

---

[4] The juvenile court confined its analysis to the best-interest factors enumerated in R.C. 2151.414(D)(1). The facts in this case did not trigger R.C. 2151.414(D)(2). *See In re T.B.*, 2025-Ohio-2075, ¶ 37 (8th Dist.); *In re P.J.*, 2021-Ohio-1821, ¶ 26 (8th Dist.).

be returned to mother. R.C. 2151.414(E) states that "[i]f the court determines, by clear and convincing evidence . . . that one or more of the [enumerated] factors exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" *Id. See also In re Glenn*, 139 Ohio App.3d 105, 113 (8th Dist. 2000). Thus, R.C. 2151.414(B)(1)(a) was satisfied.

{¶ 27} The juvenile court also found that A.R.-C.'s "continued residence in or return to the home of [mother] . . . would be contrary to the child's best interest." It listed all of the factors under R.C. 2151.414(D)(1)(a) through (e) and stated that it had considered those factors. When analyzing the best interest of the child, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Furthermore, "[t]he Ohio Supreme Court has held that 'R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires.'" *In re M.B.*, 2024-Ohio-6028, ¶ 30 (8th Dist.), quoting *In re A.M.*, 2020-Ohio-5102, ¶ 31. *See also In re A.M.*, 2025-Ohio-752, at ¶ 21 (8th Dist.). Moreover, "[t]his court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.).

{¶ 28} The juvenile court's decision indicates it considered the required statutory factors with respect to the best interests of the child. Our independent

review confirms that the juvenile court's best-interest determination is supported by the record.

{¶ 29} R.C. 2151.414(D)(1)(a) relates to interactions and relationships between children and other significant individuals in their lives, including parents, siblings, other relatives, and foster caregivers. As CCDCFS correctly observes, "the statute requires that a court examine not only the children's relationships with others but also their 'interaction.'" *In re T.J.*, 2021-Ohio-4085, ¶ 46 (6th Dist.). The record establishes that mother had no visitations with A.R.-C. after her removal because of the no-contact order. While father is not a party to the appeal, his whereabouts were unknown and he had never made himself available to CCDCFS. The record further established that A.R.-C. appeared to be flourishing in the placement with her godparents (the grandparents of her half-brother), whom she referred to as Grandma and Grandpa. The record also demonstrated that A.R.-C. had a relationship with her half-brother prior to her removal from mother's care and was closely bonded with him. This is well supported by the GAL's report, which states that A.R.-C. viewed her caregivers as her family, that she enjoyed living with them, and that her half-brother and the half-brother's father lived nearby. This factor, therefore, weighed in favor of permanent custody.

{¶ 30} R.C. 2151.414(D)(1)(b) deals with the wishes of the child as expressed directly or through the GAL. At the time of trial, A.R.-C. was seven years old and therefore was likely too young to express her wishes directly. This aligns with precedent holding that children of this age "are too young to express an opinion on

their wishes." *In re Harlston*, 2003-Ohio-282, ¶ 44 (8th Dist.) (finding children who were aged seven and six were too young to express opinions on their wishes). The GAL, however, specifically and unequivocally recommended permanent custody to the agency. This court has previously held that in relation to this factor, consideration of the GAL's recommendation is appropriate. *In re R.A.*, 2021-Ohio-4126, ¶ 52 (8th Dist.). The juvenile court expressly stated, with respect to R.C. 2151.414(D)(1)(b), that the GAL recommended permanent custody. An independent review of the GAL's report and the transcript confirms the juvenile court's conclusion. This factor, as well, weighed in favor of permanent custody.

{¶ 31} The factor addressed in R.C. 2151.414(D)(1)(c) deals with "[t]he custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[.]" This factor merits little discussion. A.R.-C. was removed and placed in CCDCFS custody on October 7, 2024, and she remained in continuous agency custody ever since, i.e., well over 12 months. This factor weighed in favor of permanent custody.

{¶ 32} R.C. 2151.414(D)(1)(d) concerns the child's need for a legally secure placement, and whether such a placement can be achieved without a grant of permanent custody. As discussed above, the juvenile court's determination that the children could not be placed with a parent within a reasonable time or should not be placed with either parent was supported by findings consistent with R.C. 2151.414(E), any of which mandate that legal conclusion. "[A] trial court's finding

that it cannot or should not place a child with a parent precludes the court from considering returning the child to Mother's custody." *In re T.S.*, 2024-Ohio-827, ¶ 61 (8th Dist.). Accordingly, the evidence supported a finding that A.R.-C.'s need for a legally secure placement could not be satisfied by placement with either parent within a reasonable time. There was no evidence of meaningful case-plan progress to justify an extension of temporary custody. R.C. 2151.415(D)(1) requires, in pertinent part, that there be "clear and convincing evidence" that "there has been significant progress on the case plan of the child" before the juvenile court may order an extension of temporary custody.

{¶ 33} Moreover, while mother had filed motions requesting that the juvenile court order A.R.-C. placed in the legal custody of different individuals, neither of them appeared at trial despite the juvenile court's accommodations — i.e., the option to appear virtually and to have an interpreter present. Finally, A.R.-C. did not qualify for a planned permanent living arrangement. "To qualify for a planned permanent-living arrangement under R.C. 2151.353, the child must, among other things, be 'sixteen years of age or older[.]'" *In re A.F.*, 2023-Ohio-4423, ¶ 51 (8th Dist.), quoting R.C. 2151.353(A)(5). A.R.-C. was (and is) "too young to be placed into a planned permanent living arrangement." *In re D.P.*, 2020-Ohio-6663, ¶ 25 (12th Dist.). The record supported a conclusion that A.R.-C. could not achieve a legally secure placement without a grant of permanent custody to the agency.

{¶ 34} Finally, R.C. 2151.414(D)(1)(e) required the juvenile court to consider "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in

relation to the parents and child." The alleged father's abandonment of A.R.-C. satisfies the condition specified in R.C. 2151.414(E)(10). Accordingly, this factor was supported by the record.

{¶ 35} As noted above, the juvenile court specifically stated that it had considered the R.C. 2151.414(D)(1) best-interest factors. The juvenile court's entry therefore reflects that it complied with its statutory obligation to consider each factor. We have independently reviewed the entire record and found ample support for the juvenile court's ultimate determination.

{¶ 36} We reiterate that "[a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established." *In re A.M.*, 2024-Ohio-1168, at ¶ 15 (8th Dist.), citing *In re B.M.*, 2020-Ohio-4756, at ¶ 11 (8th Dist.). The record here contains ample competent, credible evidence supporting the juvenile court's findings as to each essential statutory element for an award of permanent custody. By contrast, mother's arguments for reversal, which are principally based on the contention that the juvenile court relied on inadmissible hearsay, are unpersuasive.

{¶ 37} In that regard, we agree with CCDCFS that mother's challenges focus almost exclusively on aspects of Perry's testimony that were not relevant to the juvenile court's ultimate determination. Perry testified that he was new to the case. While he lacked direct, unmediated knowledge of the circumstances surrounding

A.R.-C.'s removal from mother's case, that was merely background information, and mother admits on appeal that she appeared in juvenile court and "stipulated to the Amended Complaint, which included the child's diagnosis." (Mother's brief at p. 8.) Moreover, with respect to previous adjudications regarding mother's other children, not only did mother stipulate to those when she stipulated to the amended complaint, but the certified court records were self-authenticating and were not inadmissible hearsay. *See In re L.J.*, 2022-Ohio-2278, ¶ 33 (8th Dist.).

{¶ 38} The facts pertaining to mother's indictment, guilty plea, and conviction were established through the admission, without objection, of certified documents, including certified copies of the indictment and of the journal entry establishing the fact of mother's guilty plea and conviction for multiple offenses that included domestic violence, and that A.R.-C. was the victim. (CCDCFS exhibit Nos. 5-7.) Once again, those certified court records were self-authenticating and were not hearsay.[5]

> {¶ 39} As this court explained in *In re L.J.*, certified journal entries are
>
> admissible pursuant to Evid.R. 803(8) and 902(4) as public records. Evid.R. 902(4) provides that extrinsic evidence of authenticity is not required as a condition precedent to admissibility for certified copies of public records and Evid.R. 803(8) excludes public records and reports from the hearsay rule. *See In re S.S.*, 2018-Ohio-2279, ¶ 13 (9th Dist.),

---

[5] CCDCFS exhibit No. 7, an unredacted copy of the indictment, was offered to demonstrate that A.R.-C. was the victim in the criminal case. (Tr. 22-23.) Prior to its admission, mother's counsel was prepared to stipulate that A.R.-C. was "listed as the victim in that indictment." (Tr. 42.) Counsel withdrew the stipulation when the exhibit was admitted into evidence, but specifically indicated that there was no objection. (Tr. 42-43.) On appeal, mother concedes that her "incarceration was due to acts of domestic violence of which A.R.-C. was the victim." (Mother's brief at p. 1.) In light of this, we find no plain error in admitting CCDCFS exhibit No. 7, the uncertified copy of the indictment.

citing *In re I.T.*, 2016-Ohio-555 (9th Dist.) (holding that contents of prior dependency and neglect files were not inadmissible hearsay because certified court documents are self-authenticating under Evid.R. 902(4) and are admissible under the public records exception to the hearsay rule).

*Id.* at ¶ 33. Furthermore, "[a] guilty plea is a complete admission of guilt." *State v. Logan*, 2026-Ohio-2076, ¶ 29 (8th Dist.). In *In re Ju.G.*, 2026-Ohio-2077, ¶ 50 (8th Dist.), this court held that the juvenile court did not err by "accepting [the mother's boyfriend's] guilty plea as conclusive proof of . . . molestation and not conducting an independent examination on the molestation issue[.]" *Id.* at ¶ 50. This court observed that "[a] guilty plea is a complete admission of the defendant's guilt and the charge." *Id.*

{¶ 40} Appellant's contention that Perry's testimony concerning mother's participation in case-plan services during her incarceration was based on his conversations with a prison case manager are unavailing. As CCDCFS points out, only one of the sixteen alternative factors listed in R.C. 2151.414(E) — specifically R.C. 2151.414(E)(1) — directly pertains to case-plan services. The juvenile court made no findings whatsoever under R.C. 2151.414(E)(1). Accordingly, even if this testimony was hearsay, there is no indication the juvenile court relied on it in reaching its judgment. "A trial judge is presumed to be capable of disregarding improper testimony." *In re H.C.*, 2026-Ohio-189, ¶ 36 (8th Dist.), citing *In re S.D-S.*, 2024-Ohio-255, ¶ 36 (8th Dist.). Therefore, "even if the juvenile court admitted improper hearsay, [m]other must show that the court actually relied on that evidence in its judgment." *In re H.C.* at ¶ 36, citing *In re S.D-S.* at ¶ 36, and *In re*

*Fountain*, 2000 Ohio App. LEXIS 672, *18 (8th Dist. Feb. 24, 2000). Mother has made no such showing.

{¶ 41} CCDCFS acknowledges that the juvenile court made a finding that CCDCFS had made reasonable efforts to finalize a permanency plan for A.R.-C., but compellingly argues that the finding was not made in support of either prong of the permanent custody statutory scheme but rather to address the separate issue of preserving federal funding reimbursement for placement. *See* 45 C.F.R. 1356.21(B)(2). In addition, the juvenile court had made previous reasonable-efforts findings, including at the time of the original removal and prior to trial. In light of that, it was not required to make a reasonable-efforts finding in resolving the agency's motion for permanent custody. *See, e.g., In re C.F.*, 2007-Ohio-1104, ¶ 43; *In re T.C.*, 2024-Ohio-6131, ¶ 46-49 (8th Dist.).

{¶ 42} CCDCFS concedes that the juvenile court erroneously found that there was a prior termination of mother's parental rights regarding a different child, which the juvenile court used to support a finding pursuant to R.C. 2151.414(E)(11). As discussed above, however, only one R.C. 2151.414(E) factor was required, and we have already determined that the juvenile court's finding as to R.C. 2151.414(E)(6) was amply supported by the record. "Although the trial court made an erroneous finding, 'that does not preclude us from finding that the trial court's judgment [awarding permanent custody to the agency] is nevertheless correct.'" *In re T.T.*, 2024-Ohio-2914, ¶ 17 (8th Dist.), quoting *In re J.T.*, 2004-Ohio-5797, ¶ 36 (2d Dist.). *See also In re T.B.*, 2020-Ohio-4040, ¶ 11 (9th Dist.) ("As long as clear and

convincing evidence adduced at the hearing supports the juvenile court's finding regarding an alleged first-prong factor, an erroneous alternative finding is harmless error.").

{¶ 43} With regard to the statutory best-interest factors, mother argues that the juvenile court "made few factual findings[.]" (Mother's brief at p. 20.) As discussed above, however, no factual findings are required. Only consideration is necessary. *In re M.B.*, 2024-Ohio-6028, at ¶ 30 (8th Dist.), quoting *In re A.M.*, 2020-Ohio-5102, at ¶ 31. The juvenile court expressly stated that it considered the best-interest factors.

{¶ 44} Finally, mother's claim that Perry was confused about aspects of A.R.-C.'s relationship to her current caregivers does little to aid her argument. Perry's initial confusion regarding the length of A.R.-C.'s placement was irrelevant given the juvenile court's own trial record. The dispositional entry dated January 6, 2025, indicates that A.R.-C. was placed with her current caregivers in December 2024 as "fictive next of kin." (CCDCFS exhibit No. 1.) The relationship between A.R.-C. and her godparents was further clarified by the GAL's report, which noted that A.R.-C. viewed her godparents as her family. The juvenile court's best-interest determinations were not against the manifest weight of the evidence.

{¶ 45} As discussed above, "[w]e will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence." *In re S.H.*, 2019-Ohio-3575, at ¶ 25 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, at ¶ 48 (8th Dist.);

*see also In re M.J.*, 2013-Ohio-5440, at ¶ 24 (8th Dist.). Our independent review confirms that the juvenile court's findings were supported by clear and convincing evidence presented at trial. The greater weight of the evidence established that permanent custody was supported by the statutory factors, including factors for determining the best interest of the child. Despite mother's arguments to the contrary, we cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the grant of permanent custody should be reversed. Accordingly, we find that the juvenile court's decision granting permanent custody of A.R.-C. to CCDCFS was not against the manifest weight of the evidence. Mother's sole assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
TIMOTHY W. CLARY, J., CONCUR